UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARAM LOGISTICS, a California corporation,<br><br>          Plaintiff,<br><br>v.<br><br>UNITED STATES LIABILITY INSURANCE COMPANY, a Pennsylvania corporation,<br><br>          Defendant. | Case No.: 3:23-cv-01869-H-DEB<br><br>**ORDER:**<br><br>(1) **DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; AND**<br><br>(2) **GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Doc. Nos. 9, 15.] |

This action involves an insurance coverage dispute. On November 28, 2023, Plaintiff Aram Logistics ("Aram" or "Plaintiff") filed a motion for partial summary judgment that Defendant United States Liability Insurance Company ("USLI" or "Defendant") breached its duty to defend Aram in an underlying lawsuit. (Doc. No. 9.) On December 22, 2023, USLI filed a cross-motion for summary judgment that it owes no duty to defend and that it did not deny Aram's claim in bad faith. (Doc. No. 15.) On January 8, 2024, Plaintiff and Defendant each filed an opposition to the other party's motion for summary judgment. (Doc. Nos. 16, 18.) On January 12, 2024, USLI filed its

reply in support of its motion for summary judgment. (Doc. No. 20.) On January 15, 2024, Aram filed its reply in support of its motion for partial summary judgment. (Doc. No. 21.) The Court held a hearing on the parties' cross-motions for summary judgment on January 29, 2024. (Doc. No. 30.) David A. Gauntlett appeared for Aram and Richard D. Bremer appeared for USLI. (Id.) For the reasons discussed below, the Court denies Aram's motion for partial summary judgment that USLI breached its duty to defend and grants USLI's motion for summary judgment on the duty to defend and bad faith claims.

## BACKGROUND

Plaintiff Aram Logistics is in the business of delivering furniture from retail stores to customers. (Doc. No. 9-1 at 7.) Aram obtained from USLI a Commercial General Liability Policy (Policy Number GL 1059811) (the "Policy") for the policy period of July 15, 2020 to July 15, 2021. (Doc. No. 9-3, Declaration of Samuel Rubio ("Rubio Decl.") ¶ 2.) The Policy provides that USLI "will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury.'" (Doc. No. 1-2 ("USLI Policy") at 16.) Pertinent here, the Policy's definition of "personal and advertising injury" includes "injury . . . arising out of . . . [t]he use of another's advertising idea in your 'advertisement'" or "[i]nfringing upon another's copyright, trade dress or slogan in your 'advertisement.'" (Id. at 24.) The Policy defines "advertisement" as "a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters." (Id. at 22.) The Policy's coverage includes the "the right and duty to defend [Aram] against any 'suit' seeking [personal and advertising injury] damages." (Id. at 16.)

### A. The Underlying Diakon Action

On July 2, 2021, Diakon Logistics, Inc. ("Diakon"), a competitor of Aram, filed a lawsuit against Aram and its executives, Samuel Rubio ("Rubio") and Alvardo Hernandez ("Hernandez"), in the Superior Court of California, San Diego County (the "Diakon

Action").[1] (Doc. No. 9-2, Declaration of James A. Lowe ("Lowe Decl.") ¶¶ 2, 3; see also Doc. No. 1-3 ("Diakon Compl.").) In the lawsuit, Diakon alleges that Rubio and Hernandez, while employed by Diakon, established Aram, a competing furniture delivery company, using Diakon's trade secrets and confidential information, and funneling resources and business to Aram. (See Diakon Compl.) The Diakon Complaint asserts three causes of action against Aram: (1) the first cause of action for misappropriation of trade secrets; (2) the second cause of action for violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq.; and (3) the fourth cause of action for intentional interference with prospective economic advantage. (Id. ¶¶ 34–44, 50–55.)

**B. Aram Tenders the Claim for Defense**

On July 8, 2021, Aram tendered the Diakon Action to USLI and sought coverage under the Policy. (Lowe Decl. ¶ 29.) On July 26, 2021, USLI denied coverage. (Id.; Doc. No. 1-4.) USLI disclaimed coverage under the USLI Policy's "personal and advertising injury" on the grounds that Diakon's causes of action were rooted in intentional conduct and the Policy's infringement exclusion excluded Diakon's claims for intentional misappropriation of trade secrets. (Doc. No. 1-4 at 5.) USLI further explained that none of the remaining allegations in the Diakon Action qualified as "personal or advertising injury." (Id.)

On July 31, 2023, Aram sought reconsideration of USLI's coverage position. (Lowe Decl. ¶ 31.) In its request for reconsideration, Aram presented additional information obtained through discovery in the Diakon Action. (Doc. No. 1-5 at 1; Lowe Decl. ¶ 31.) Specifically, Aram provided the deposition testimony of Robert Davis ("Davis"), Diakon's president, dated June 1, 2023, which Aram claimed, "clarified that a major factual

---

[1] The San Diego Superior Court action is Diakon Logistics (Delaware) Inc. v. Aram Logistics, Inc., Samuel Rubio, Alvaro Hernandez, and Does 1 to 50, Case No. 32-2021-00028563-CU-BT-CTL.

allegation of Diakon is that Aram and its officers have taken Diakon's advertising ideas and styles and have used them in Aram's own advertising, including in its Internet websites." (Doc. No. 1-5 at 4; Lowe Decl. ¶ 8; see also Doc. No. 1-6.) As such, Aram argued that the Davis deposition testimony triggered the Policy's "personal and advertising injury" coverage, giving rise to USLI's duty to defend Aram in the Diakon Action. (Doc. No. 1-5 at 13.) On September 8, 2023, USLI reaffirmed that there remained no coverage under the Policy for the Diakon Action, notwithstanding the Davis deposition testimony. (Doc. No. 1-9 at 7; Lowe Decl. ¶ 32.) USLI explained that because the injury alleged in the underlying action "arose out of access to or disclosure of [Diakon's] confidential or personal information, including . . . trade secrets" the Policy's confidential information exception applied. (Doc. No. 1-9 at 7.) USLI further clarified that other exclusions to the Policy bar coverage as well. (Id.)

On October 12, 2023, Aram brought the present action against USLI, alleging causes of action for (1) declaratory relief – duty to defend, (2) breach of contract, and (3) breach of the covenant of good faith and fair dealing. (Doc. No. 1, "Compl.") On November 27, 2023, USLI filed its answer to Aram's complaint. (Doc. No. 6.)

Aram moves for partial summary judgment that USLI owes a duty to defend it in the Diakon Action. (Doc. No. 9-1 at 7.) USLI cross-moves for summary judgment that it owes no duty to defend Aram in the Diakon Action, and that it did not act in bad faith because no potential for coverage exists. (Doc. No. 15 at 15–16, 26.)

## DISCUSSION

### I.   Legal Standards for Summary Judgment

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 if the moving party demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of a case. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986). "A genuine issue of material fact exists when the evidence is such that a reasonable

jury could return a verdict for the nonmoving party." Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc., 618 F.3d 1035, 1031 (9th Cir. 2010) (citation omitted). "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citation omitted).

The party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The moving party can satisfy this burden in one of two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to establish an essential element of the nonmoving party's case that the nonmoving party bears the burden of proving at trial. Celotex, 477 U.S. at 322–23; Jones v. Williams, 791 F.3d 1023, 1030 (9th Cir. 2015). Once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to "set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." T.W. Elec. Serv., Inc., 809 F.2d at 630 (citation and internal quotations omitted).

In ruling on a summary judgment motion, the Court must view the facts and draw all reasonable inferences in the light most favorable to the non-moving party. Scott v. Harris, 550 U.S. 372, 378 (2007). A court should not weigh the evidence or make credibility determinations. See Anderson, 477 U.S. at 255.

## II. ANALYSIS

Aram argues that it is entitled to partial summary judgment because, under the terms of the Policy, USLI has a duty to defend Aram in the Diakon Action if the lawsuit is potentially covered by the Policy. (Doc. No. 9-1 at 7, 10.) Specifically, Aram argues that the Diakon Action is potentially covered under the Policy because the Diakon Complaint, read in tandem with the Davis deposition testimony, alleges an advertising injury. (Id. at 19.) USLI argues that the Diakon Action does not allege an advertising injury and that the Davis deposition does not trigger its duty to defend under the potential for coverage

standard. (Doc. No. 15 at 15–16, 24–26.) USLI also asserts that several exclusions preclude coverage, including the confidential information exclusion, exclusion a. (the "knowing violation exclusion"), and exclusion i. (the "intellectual property exclusion"). (Id. at 18–20, 22.) USLI further claims that coverage for Diakon's UCL claim is unavailable as a matter of law because damages are not an available remedy under California law, (Id. at 20–21), and that California Insurance Code § 533 bars coverage of the Diakon Action as a matter of public policy. (Id. at 23–24.) Last, USLI argues that Aram's bad faith claim fails as a matter of law because no potential for coverage exists under the Policy. (Id. at 26.)

The parties agree that California law governs the Policy. (Doc. No. 9-1 at 10; Doc. No. 15 at 15.) See, e.g., Intri-Plex Techs., Inc. v. Crest Grp., Inc., 499 F.3d 1048, 1052 (9th Cir. 2007) (stating, in an insurance coverage dispute, that the law of the forum state applies in diversity actions). Under California law, the interpretation of an insurance policy is a question of law to be determined by the Court. See Waller v. Truck Ins. Exch., Inc., 11 Cal. 4th 1, 18 (1995), as modified on denial of reh'g (Oct. 26, 1995) ("When determining whether a particular policy provides a potential for coverage and a duty to defend, we are guided by the principle that interpretation of an insurance policy is a question of law."); see also New Hampshire Ins. Co. v. R.L. Chaides Const. Co., 847 F. Supp. 1452, 1455 (N.D. Cal. 1994) (The "interpretation of insurance contracts raise questions of law and thus are particularly amendable [sic] to summary judgment.").

Insurance contracts are subject to the ordinary rules of contractual interpretation. Bank of the W. v. Superior Court, 2 Cal. 4th 1254, 1264 (1992). "The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties." Id. "Such intent is to be inferred, if possible, solely from the written provisions of the contract." AIU v. Superior Court (FMC Corp.), 51 Cal. 3d 807, 822 (1990). "If contractual language is clear and explicit, it governs." Bank of the W., 2 Cal. 4th at 1264. On the other hand, "[a] policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable. But language in a contract must be interpreted

as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract." Waller, 11 Cal. 4th at 18 (internal citation omitted). If there is an ambiguity, the policy terms must be "interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it." Bank of the W., 2 Cal. 4th at 1264–65 (internal citation omitted). The insured bears the burden of proving coverage under the policy, and coverage is interpreted broadly to provide the greatest possible protections to the insured. See Waller, 11 Cal. 4th at 16; Reserve Ins. Co. v. Pisciotta, 30 Cal. 3d 800, 808 (1982).

### A. The "Potential for Coverage" Standard

The Policy provides that USLI "will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury'" and defines "personal and advertising injury" as including "injury . . . arising out of . . . [t]he use of another's advertising idea in your 'advertisement'" or "[i]nfringing upon another's copyright, trade dress or slogan in your 'advertisement.'" (USLI Policy at 16, 24.) The primary dispute is whether the Diakon Action creates a "potential for coverage" under the terms of the Policy. For the reasons set forth below, the Court concludes that it does not.

"The determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy." Horace Mann Ins. Co. v. Barbara B., 4 Cal. 4th 1076, 1081 (1993), as modified on denial of reh'g (May 13, 1993). "Any doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor." Montrose Chem. Corp. v. Superior Ct., 6 Cal. 4th 287, 299–300 (1993) (citation omitted).

Here, the Diakon Action asserted three causes of action against Aram, all of which pertain to the alleged intentional and calculated misappropriation of trade secrets and confidential information by Aram's principals, Rubio and Hernandez. (See Diakon Compl.) For example, in its cause of action for misappropriation of trade secrets, Diakon alleged that Aram "misappropriated Diakon's trade secrets by . . . improperly copying and removing such information from Diakon's computer systems and files, and by using such

information to solicit customers of Diakon on behalf of [Aram], and to divert independent contractor carrier servicing Diakon customer accounts to [Aram's] customer accounts instead." (Id. ¶ 37.) Diakon's UCL claim is derivative of its misappropriation of trade secrets claim, alleging that Aram "unlawfully obtained and used Diakon's proprietary, confidential, and trade secret information, and unlawfully solicited Diakon's customers, thereby engaging in unfair, unlawful, and fraudulent business practices." (Id. ¶ 41.) Likewise, Diakon roots its claim for intentional interference with prospective economic advantage in Aram's alleged illicit use of Diakon's confidential information and trade secrets to disrupt Diakon's customer relationships. (Id. at ¶¶ 50–55.) At no point does the Diakon Action make any reference to the misappropriation of any advertising materials, nor does it assert causes of action for the misappropriation of Diakon's advertising or for infringement upon Diakon's copyright, trade dress, or slogan in Aram's advertisement. Thus, the Diakon Action does not include potentially covered claims that might give rise to the duty to defend.

Nonetheless, both parties agree that California law extends the duty to defend beyond the specific claims set forth in the Diakon Action. (Doc. No. 15 at 24; Doc. No. 9-1 at 10.) Under California law, insurers "must defend a suit which potentially seeks damages within the coverage of the policy." Gray v. Zurich Ins. Co., 65 Cal. 2d 263, 276 (1966). It is axiomatic that "[t]he duty to defend is broader than the duty to indemnify." Montrose Chem. Corp., 6 Cal. 4th at 295, 299–300 ("[A]n insurer owes a broad duty to defend its insured against claims that create a potential for indemnity."). "If any facts stated in or fairly inferable from the complaint, or otherwise known or discovered by the insurer, suggest a claim potentially covered by the policy, the insurer's duty to defend arises." Albert v. Truck Ins. Exch., 23 Cal. App. 5th 367, 377–78 (2018). Indeed, "California courts have repeatedly found that remote facts buried within causes of action that may potentially give rise to coverage are sufficient to invoke the defense duty." Pension Tr. Fund for Operating Engineers v. Fed. Ins. Co., 307 F.3d 944, 951 (9th Cir. 2002). Insurers are also bound to consider evidence "extrinsic" to the allegations set forth

on the face of a third-party complaint. Horace Mann Ins. Co., 4 Cal. 4th at 1081 ("Facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy."). Extrinsic evidence may establish an insurer's duty to defend, or it may establish the lack of such a duty. Waller, 11 Cal. 4th 1 at 44. The rationale of this "extrinsic evidence" rule is that neither the insured nor the insurer should be bound by the specific allegations advanced by a third party, when the circumstances of the case clearly establish, or eliminate, the insurer's obligations. An insurer "cannot construct a formal fortress of the third party's pleadings and retreat behind its walls." Gray, 65 Cal. 2d at 276.

Aram argues that an in-depth evaluation of the Diakon Complaint, read in conjunction with extrinsic evidence from the Davis deposition, reveals that it contains allegations that would create the potential for coverage under the Policy. (Doc. No. 9-1 at 11–20.) Specifically, Aram notes that the Diakon Complaint contains an allegation that Aram misused Diakon's non-confidential, non-trade secret "business information," including what Diakon claimed was its proprietary information in advertisements on Aram's website. (Doc. No. 16 at 12.) In discovery, Aram claims that Davis clarified the "proprietary business information" allegedly used by Aram were the "advertising ideas" owed by Diakon, including "images, terminology, business offering . . . the way we wore uniforms, badges, the way we operated." (Doc. No. 1-6 at 12.) In his deposition, Davis testified that Aram used Diakon's "advertising materials, material that [Diakon] had paid to produce and develop." (Id.) He further explained that Aram used similar advertising themes, marketing schemes, banners, and taglines—all of which were "eerily identical" to Diakon's advertising and marketing. (Id. at 18.) Davis also testified that photographs owned by Diakon were used in Aram's website advertising. (Id. at 16.) Based on the Davis deposition testimony, Aram argues there is the potential for amendment of the Diakon Action to specifically include allegations for an "advertising injury," which would be covered under the Policy. (Doc. No. 9-1 at 19.)

The Court agrees with Aram that it is not merely the allegations of the complaint,

but extrinsic evidence that determines the potential for coverage. <u>Horace Mann Ins. Co.</u>, 4 Cal. 4th at 1081. USLI agrees that this is the correct analytical approach. (Doc. No. 20 at 4.) However, the Court disagrees with Aram's reading of the Diakon complaint together with its interpretation of the extrinsic evidence. As to the Complaint, Aram cites to several paragraphs in the Diakon Complaint; however, none support Aram's position that the <u>Diakon</u> Action alleges the taking of "proprietary business information" that is not also either confidential or a trade secret. (Doc. No. 9-1 at 13.) Aram strips the allegations of the Diakon Complaint out of context. Indeed, the word "proprietary" is always stated in the context of "proprietary, confidential, and trade secret information." (Diakon Compl. ¶¶ 41, 52, 53, 62.) Each cited allegation of the Diakon Complaint involves Aram's alleged taking or use of Diakon's confidential information or trade secrets. (Doc. No. 16 at 12 (quoting Diakon Compl. ¶¶ 19, 22, 23, 25, 41, 52.).) Simply put, Diakon asserted no claim that does not involve its trade secrets or confidential information, nor has it pled a claim regarding Aram's misuse of Diakon's confidential, non-trade secret information. The words "advertisement" or "advertising" do not even appear in the Diakon Complaint. Moreover, a claim for misappropriation of Diakon's advertisements or marketing materials cannot be reconciled with the underlying facts or causes of action asserted in the <u>Diakon</u> Action. Both parties agree that an advertisement by its very nature is neither confidential nor a trade secret because ads are disseminated to the public for marketing and advertising purposes. (Compl. ¶ 140; Doc. No. 15 at 17.) In sum, the Court concludes that there are no remote facts buried anywhere in any of the Diakon causes of action that may potentially give rise to coverage under the Policy. "An insurer is not obligated to defend its insured where the basis for claiming potential liability under the policy is so tenuous and farfetched." <u>Giddings v. Indus. Indem. Co.</u>, 112 Cal. App. 3d 213, 220 (Ct. App. 1980).

Neither can Aram manufacture a potential for coverage under the Policy by using the Davis deposition testimony. Aram argues that "discovery testimony need not be formally alleged in the complaint to create the potential for coverage." (Doc. No 9-1 at 19.) Aram repeatedly characterizes testimony from the Davis deposition as "allegations"

originating from the Diakon Complaint. (See e.g., Doc. No. 9-1 at 12–14, 28; Doc. No. 16 at 11, Doc. No. 21 at 10.) However, testimony is not the same thing as an allegation in a cause of action. Soderstedt v. CBIZ Southern California, LLC, 197 Cal. App. 4th 133, 154 (2011). California courts routinely restrict the "potential for coverage" to the nature of the lawsuit actually asserted by the third party. See e.g., Ulta Salon, Cosms. & Fragrance, Inc. v. Travelers Prop. Cas. Co. of Am., 197 Cal. App. 4th 424, 433 (2011) (finding no duty to defend based on unpled claims).

Contrary to Aram's assertions, USLI owes no duty to defend based upon mere speculation as to claims that Diakon might have brought or might bring in the future based on the Davis deposition. "An insured may not trigger the duty to defend by speculating about extraneous 'facts' regarding potential liability or ways in which the third party claimant might amend its complaint at some future date. This approach misconstrues the principle of 'potential liability' under an insurance policy." Gunderson v. Fire Ins. Exch., 37 Cal. App. 4th 1106, 1114 (1995). Thus, "the insured may not speculate about unpled third party claims to manufacture coverage." Hurley Constr. Co. v. State Farm Fire & Cas. Co., 10 Cal. App. 4th 533, 538 (1992); see also Hudson Ins. Co. v. Colony Ins. Co.,624 F.3d 1264, 1267–68 (9th Cir. 2010) ("These cases concluded that there was no potential for coverage, not because the complaint did not list a particular legal cause of action, but because the complaint did not allege any facts supporting a covered cause of action."). That is precisely what Aram purports to do here.

Diakon decided not to include any factual allegations about Aram's purported taking or misuse of Diakon's advertising or marketing material, and Diakon also did not advance any claims for misappropriation of advertising materials or copyright infringement based on Aram's use of Diakon's advertising, marketing, or photographs. The Diakon Action contains neither the legal claims that would give rise to coverage under the Policy, nor any of the factual allegations that would be necessary to support such claims. Like the Ninth Circuit found in Microtec Research v. Nationwide Mutual Insurance Co., Diakon "knew about [the extrinsic facts] before [it] filed suit, perhaps could have sued [based on those

facts], but did not." 40 F.3d 968, 971 (9th Cir. 1994). "Whatever [Diakon's] reasons were for omitting a claim based on [the taking of its advertising, marketing ideas, and copyrighted photographs], it remains the law of California that when the underlying suit raises no potential for a liability covered by the policy, the insurance company's duty to defend is not triggered." Id.

The duty to defend is broad, but it is not so expansive that it requires USLI to undertake a defense as to a potential claim that is both factually and legally untethered from the third party's complaint. Accordingly, USLI has met its burden to establish that the Diakon Action does not create the potential for coverage and that USLI has no duty to defend Aram under the Policy.

**B. The Policy's Exclusions**

The Court must first evaluate whether there exists a potential for coverage under the Policy looking at both the allegations in the complaint and the extrinsic evidence. Horace Mann Ins. Co., 4 Cal. 4th at 1078. If there is no potential for coverage, and thus no duty to defend, both parties agree that there is no need to determine whether any exclusions to the Policy apply. But even if there were a potential for coverage, USLI argues that the Diakon Action falls into several exclusions to the Policy. Specifically, USLI asserts that the confidential information exclusion, exclusion a. (the "knowing violation exclusion"), and exclusion i. (the "intellectual property exclusion") apply. (Doc. No. 15 at 18–20, 22.)

"Insurance coverage is interpreted broadly so as to afford the greatest possible protection to the insured." MacKinnon v. Truck Ins. Exch., 73 P.3d 1205, 1213 (Cal. 2003) (citations omitted). When there is ambiguity in an insurance policy, the policy's exclusions and exceptions are strictly construed against the insurer and liberally interpreted in favor of the insured to protect the insured's reasonable expectation of coverage. La Jolla Beach & Tennis Club, Inc. v. Indus. Indem. Co., 884 P.2d 1048, 1053 (Cal. 1994); see also Delgado v. Heritage Life Ins. Co., 203 Cal. Rptr. 672, 677 (Cal. Ct. App. 1984). Any limitation of coverage must be "stated precisely and understandably, in words that are part of the working vocabulary of the average layperson." Haynes v. Farmers Ins. Exch., 89

P.3d 381, 385 (Cal. 2004). Furthermore, the burden is on the insurer to "phrase exceptions and exclusions in clear and unmistakable language." MacKinnon, 73 P.3d at 1213 (quoting State Farm Mut. Auto. Ins. Co. v. Jacober, 514 P.2d 953, 957–58 (Cal. 1973)). Nevertheless, "[a]n insurance company can choose which risks it will insure and which it will not, and coverage limitations set forth in a policy will be respected." Fidelity & Deposit Co. v. Charter Oak Fire Ins. Co., 78 Cal. Rptr. 2d 429, 432 (Cal. Ct. App. 1998) (citing Legarra v. Federated Mutual Ins. Co., 42 Cal. Rptr. 2d 101, 105 (Cal. Ct. App. 1995)).

The insured bears the burden of establishing that a claim is within the basic scope of coverage. MacKinnon, 73 P.3d at 1213. But the burden is on the insurer to establish that the claim is specifically excluded. Id. (citing Aydin Corp. v. First State Ins. Co., 959 P.2d 1213, 1215 (Cal. 1998)). The Court considers each exclusion asserted by USLI in turn.

### 1. Confidential Information Exclusion

The USLI Policy includes an endorsement titled, "Exclusions – Access or Disclosure of Confidential Or Personal Information And Data-Related Liability – Limited Bodily Injury Exception Not Included," (the "confidential information exclusion"), which provides in relevant part:

> This insurance does not apply to:
>
> **Access Or Disclosure Of Confidential Or Personal Information**
>
> "Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

(USLI Policy at 28.) USLI argues that the confidential information exclusion bars coverage of each cause of action in the Diakon Complaint because each claim arises out of Aram's alleged access to and disclosure of Diakon's trade secrets and confidential information. (Doc. No. 15 at 18, 20, 21.) Aram contends that the confidential information exclusion does not apply because "Diakon alleges that Aram has used or copied its advertising content and its advertising ideas which it labels as 'proprietary.'" (Doc. No. 9-

1 at 27.) According to Aram, Diakon's potential claim for misappropriation of advertising materials or copyright infringement provide facts that do not fall victim to the confidential information exclusion because ads or advertising ideas cannot be confidential or trade secrets by the very fact that they are disclosed to the public. (Id.)

However, Aram's argument fails because Diakon does not "factually allege[] that Aram publicly used Diakon's publicly disclosed advertising ideas and copyrighted photos in Aram's advertising." (Doc. No. 9-1 at 28–29.) Aram draws these purported "allegations" from the Davis deposition, not the Diakon Complaint. Even considering the extrinsic evidence, there no link between the Davis deposition testimony and the claims alleged in the Diakon Complaint. The Diakon Complaint does not allege facts or causes of action regarding any non-trade secret claim. The Diakon Action clearly alleges that Aram misappropriated its confidential information and trade secrets and bases each cause of action off those allegedly wrongful acts. (See Diakon Compl. ¶¶ 22, 24, 34–39, 41, 52, 53.) The exclusion is not ambiguous. As a result, the Court concludes that it precludes coverage under the Policy for the Diakon Action.

2. Knowing Violation Exclusion

The Policy includes exclusion a., (the "knowing violation exclusion"), which states that insurance coverage does not apply to:

> **a. Knowing Violation Of Rights Of Another**
>
> "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

(USLI Policy at 16.) USLI argues that each cause of action against Aram asserts specific allegations encompassing Aram's knowledge and intent that the actions that Aram undertook would inflict injury on Diakon. Thus, because all Diakon's causes of action allege Aram acted with the intent to harm Diakon, USLI posits that the knowing violation exclusion applies. (Doc. No. 15 at 18–20, 22; Doc. No. 20 at 8.)

Here, the causes of action in the Diakon Complaint all include allegations regarding Aram's "deliberate intent to injure" Diakon's business. (Diakon Compl. ¶ 39.) For example, in the first cause of action, Diakon alleges that Aram "knowingly and improperly used [Diakon's trade secrets], in direct competition with Diakon to solicit Diakon's customers." (Id. ¶ 37.) In Diakon's UCL claim, Diakon alleges "by the acts alleged herein," (i.e., by acting "willfully, maliciously, and with intent to harm Diakon"), Aram "unlawfully obtained and used Diakon's proprietary, confidential, and trade secret information, and unlawfully solicited Diakon's customers, thereby engaging in unfair, unlawful, and fraudulent business practices." (Id. ¶¶ 39, 41.) In its intentional interference with prospective economic advantage claim, Diakon alleges that Aram "knew of [Diakon's] business relationships, and intended to disrupt [them]" by "soliciting Diakon's customer accounts for [Aram's] benefit by unlawfully using Diakon's proprietary, confidential, and trade secret information." (Id. ¶ 52; see also id. ¶ 55.) Given these clear allegations in the Diakon Complaint, Aram's claim that "Diakon's allegations contain no assertion of knowledge" is without merit. (Doc. No. 9-1 at 24, 25.) To the contrary, each cause of action asserted against Aram alleges intentional, knowing harm. (See Diakon Compl. ¶¶ 37, 39, 41, 52.) Aram concedes that the knowing violation exclusion applies "when the underlying allegations assert liability that would only be possible upon a finding of intentional misconduct known to be injurious at the time the allegedly 'wrongful act' was committed." (Doc. No. 16 at 23.) That is precisely what is alleged in the Diakon Action.

USLI also argues that Diakon's intentional interference with prospective economic advantage claim necessarily invokes the knowing violation exclusion. (Doc. No. 15 at 22.) Specifically, USLI points to the elements of the claim, which require that Diakon prove Aram engaged in "intentional[] wrongful acts designed to disrupt the relationship" to argue that the allegations in the Diakon Complaint necessarily fall within the scope of the exclusion. (Id. (quoting Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc., 2 Cal. 5th 505, 512 (2017).) The Court agrees.

Aram relies on Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134 (2003) for the proposition that the intent element of the tort of intentional interference with prospective economic advantage may be satisfied "by independently tortious means." (Doc. No. 16 at 14.) Aram then argues that it could be potentially found liable to Diakon for this cause of action without Diakon proving "knowledge" or "scienter" because liability could be based on a finding or recklessness or negligence. (Id. at 14–15.) Aram pulls the holding from Korea Supply out of context. There, the California Supreme Court clarified that the tort of intentional interference with prospective economic advantage requires an independently wrongful act. Korea Supply, 29 Cal. 4th 1134 at 1158. Put differently, there must be independently wrongful conduct "proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard" that is independent of the interference itself. Id. at 1159. The language Aram quotes does not purport to change what must be pled to satisfy the intent element of the claim. In fact, Korea Supply clarified that a plaintiff may satisfy the intent element of an intentional interference with prospective economic advantage claim by pleading either (1) specific intent or (2) knowledge that the interference was certain or substantially certain to occur as a result of its action. 29 Cal. 4th at 1154. A plaintiff cannot prove this tort simply by alleging recklessness or negligence as Aram claims. See id. Here, Diakon pleads in its intentional interference with prospective economic advantage claim that Aram "knew of [Diakon's] business relationships, and intended to disrupt [them]." (Diakon Compl. ¶ 52.) Moreover, there are no allegations in the Diakon Action that Aram acted with recklessness or negligence. Thus, the knowing violation exclusion to the Policy excludes this claim from coverage by the nature of the elements of an intentional interference with prospective economic advantage cause of action and Diakon's pleading of the same.

USLI further argues that Cal. Ins. Code § 533 bars coverage for all three causes of action in the Diakon Complaint as a matter of public policy. (Doc. No. 15 at 23.) California Insurance Code section 533 provides:

An insurer is not liable for a loss caused by the wilful act of the insured; but he

>is not exonerated by the negligence of the insured, or of the insured's agents or others.

USLI acknowledges that Cal. Ins. Code § 533 does not necessarily preclude a defense against claims alleging willful misconduct. (Doc. No. 15 at 23 (quoting Horace Mann, 4 Cal. 4th at 1087 ("[N]o public policy forbids the defense of claims alleging intentional acts.")).) As a result, the Court need not address whether Cal. Ins. Code § 533 precludes a defense.

### 3. Intellectual Property Exclusion

The Policy also includes exclusion i., ("the intellectual property exclusion"), which states that the insurance does not apply to:

> **i. Infringement of Copyright, Patent, Trademark or Trade Secret**
>
> "Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".
>
> However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

(USLI Policy at 16.) USLI argues that the intellectual property exclusion functions to bar coverage for the Diakon Action because Diakon premises each cause of action in the complaint solely on the misappropriation of trade secrets or confidential information. (Doc. No. 20 at 12.) USLI posits that the exception to the exclusion only extends to allegations of infringement of "copyright, trade dress or slogan" and does not except infringement claims based on the misappropriation of trade secrets. (Id.) The Court agrees with USLI.

In response, Aram asserts that the Diakon Action includes possible claims independent of the misappropriation of trade secrets such as the "distinct allegations of misuse of proprietary information including the public advertising ideas." (Doc. No. 9-1 at 20.) Aram also claims the Davis deposition testimony reveals Diakon could potentially

amend its pleadings to include a copyright infringement claim, which would support coverage under the Policy and would not become subject to the intellectual property exclusion by function of the exception. (Doc. No. 21 at 14.) Again, Aram's argument relies on finding a potential for coverage based on facts and legal causes of action—misappropriation of advertising materials and copyright infringement—which do not appear in the Diakon Complaint. Aram points to an exhibit produced during Davis's deposition in which he wrote: "[i]f anyone else had [used Diakon's photos on their website] we would have our attorney sue them for copyright infringement . . .. You can't use any copyrighted material, images, branding" to argue that "liability for copyright infringement was plainly alleged." (Doc. No. 16 at 22; Doc. No. 1-8 at 1.) If copyright infringement had been "plainly alleged" the cause of action would be in the Diakon Complaint, but it is not. Diakon did not allege copyright infringement or misappropriation of advertising materials in the Diakon Action; it sued Aram for misappropriation of trade secrets, unfair competition, and intentional interference with prospective economic advantage. (See Diakon Compl.) Microtec, 40 F.3d 968 at 971. Moreover, the potential copyright infringement claim is even more "tenuous and farfetched" seeing as Diakon cannot even bring a claim for copyright infringement in their present state court action without voluntarily seeking removal to federal court. See 85 U.S.C. § 1338(a) ("No State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to . . . copyrights."); Giddings, 112 Cal. App. at 220. Aram cannot speculate about extraneous facts regarding potential liability or possible amendments to the Diakon Complaint to escape the Policy's plainly worded exclusion. See Gunderson, 37 Cal. App. 4th at 1114. Accordingly, the intellectual property exclusion applies to the claims asserted in the Diakon Action.

**C. UCL Claims are Barred as a Matter of Law**

USLI also argues that there is no potential for coverage under the Policy for Diakon's UCL claim because damages are not an available remedy for claims brought pursuant to California Business & Professions Code § 17200 et seq. (Doc. No. 15 at 20.) The Court

agrees. Under California law, the available remedies for a UCL claim, which include (1) the "disgorgement of money that has been wrongfully obtained" or (2) an "order restoring money which may have been acquired by means of unfair competition," are not within the scope of coverage provided by a general liability insurance policy. Bank of the W., 2 Cal. 4th 1254 at 1266 (citations omitted). Indeed, the parties do not dispute that "damages are not available under [Cal. Bus. & Prof. Code §] 17203." Id. (Doc. No. 15 at 20; Doc. No. 16 at 13.) Here, the Policy only provides coverage for "damages" because of a "personal and advertising injury." (USLI Policy at 16.) The Diakon Action does not allege an "advertising injury" nor can the Davis deposition testimony create the potential for coverage under the UCL cause of action. Accordingly, there are no "damages" potentially arising within the scope of coverage of the Policy for the UCL claim asserted against Aram.

### D. Aram's Bad Faith Claim

USLI's seeks summary judgment on Aram's claim that USLI acted in bad faith. (Doc. No. 15 at 26.) USLI argues that this claim fails because the absence of a potential for coverage precludes a finding of bad faith as a matter of law. (Id.) Aram contends that USLI acted unreasonably by failing to properly investigate and consider all pertinent facts, including the Davis deposition, and by denying a defense without justification, thus breaching the implied covenant of good faith and fair dealing. (Doc. No. 16 at 30–31.)

The covenant of good faith and fair dealing is implied in every contract including insurance policies. Comunale v. Traders & Gen. Ins. Co., 50 Cal. 2d 654, 658 (1958); Kransco v. Am. Empire Surplus Lines Ins. Co., 23 Cal. 4th 390, 400, as modified (July 26, 2000). "[T]o establish a breach of the implied covenant of good faith and fair dealing under California law, a plaintiff must show: (1) benefits due under the policy were withheld; and (2) the reason for withholding benefits was unreasonable or without proper cause." Sekera v. Allstate Ins. Co., 763 F. App'x 629, 630 (9th Cir. 2019) (quoting Guebara v. Allstate Ins. Co., 237 F.3d 987, 992 (9th Cir. 2001) (applying California law)). An insurer's wrongful and unreasonable refusal to defend its insured constitutes a violation of the covenant of good faith and fair dealing. Great Am. Ins. Co. v. Quintana Homeowners

Ass'n, No. 5:17-CV-00693-EJD, 2018 WL 3632111 at *3 (N.D. Cal. July 31, 2018) (citations omitted). However, where "there is no potential for coverage, and hence, no duty to defend under the terms of the policy, there can be no action for breach of the implied covenant of good faith and fair dealing." Stone v. Hartford Cas. Co., 470 F. Supp. 2d 1088, 1099 (C.D. Cal. 2006) (quoting Waller, 11 Cal. 4th at 36); see also Musso & Frank Grill Co., Inc. v. Mitsui Sumitomo Ins. USA Inc., 77 Cal. App. 5th 753, 761 (2022) ("Because [the insured] cannot establish a breach of contract, it follows necessarily that it cannot prove a breach of the covenant of good faith and fair dealing.").

USLI was not obligated to defend Aram under the Policy, meaning USLI did not withhold any benefits. Accordingly, Aram fails to meet the first prong of a breach of good faith cause of action. Therefore, USLI did not breach the implied covenant of good faith and fair dealing as a matter of law.

### E. Evidentiary Objections

Aram filed evidentiary objections to the declarations of Richard D. Bremer that USLI submitted in support of USLI's motion for summary judgment and in opposition to Aram's motion for partial summary judgment. (Doc. Nos. 17, 22.) The Court has reviewed Aram's objections and has considered only such evidence as is proper in ruling on the cross-motions for summary judgment.

### CONCLUSION

USLI has shown that the Diakon Action did not trigger its duty to defend under the "potential for coverage" standard. Accordingly, the Court grants USLI's motion for summary judgment on the duty to defend and bad faith claims and denies Aram's motion for partial summary judgment.

**IT IS SO ORDERED.**

DATED: January 31, 2024

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT